# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is only binding on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3143-15T1

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

C.S.R.,

    Defendant-Appellant,

and

C.C.,
    Defendant.

_____

IN THE MATTER OF THE GUARDIANSHIP
OF S.B.R. AND S.D.R., minors.

_____

        Submitted April 25, 2017 — Decided  May 12, 2017

        Before Judges Reisner, Koblitz and Mayer.

        On appeal from the Superior Court of New
        Jersey, Chancery Division, Family Part, Essex
        County, Docket No. FG-07-231-15.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Dorian Smith, Designated
        Counsel, on the brief).

Christopher S. Porrino, Attorney General, attorney for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Julie B. Colonna, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Caitlin McLaughlin, Designated Counsel, on the brief).

PER CURIAM

Defendant C.S.R. appeals from a Family Part order dated March 18, 2016, terminating his parental rights to his two children, "Sarah" and "Suzy,"[1] who are now eight and four years old. The children's mother, C.C. has surrendered her parental rights.[2] Because the permanent placement has been disrupted and the children moved, and because the expert found the initial prospective relative adoptive parents could mitigate any harm caused by the termination of defendant's rights, we remand for a further hearing. We affirm the remainder of the court's decision substantially for the reasons stated by the judge in her eighty-six-page written opinion issued on March 22, 2016.

The evidence is outlined in detail in the judge's opinion. A summary will suffice here. Sarah was first removed from her

---

[1] We use pseudonyms and initials to refer to the parties pursuant to Rule 1:38-3(d)(12).

[2] She first gave an identified surrender to the paternal relatives and later to the current caretakers.

home in 2009, when she was only a few weeks old. She tested positive for methadone and went through opiate withdrawal at birth. In February 2013, Suzy was born and also tested positive for methadone at birth. The two girls were reunified with their mother at a "Mommy and Me" program for short periods of time, but the mother continued to use drugs. Both children were also placed with defendant's brother and sister-in-law more than once, and that is where they resided at the time of the guardianship trial.

Defendant, who is now forty-seven years old, reported having as many as fifteen other children, although he could not supply the last name of one of the children. He was at times hard to locate. From April to June 2012 neither parent could be located. In March 2013, defendant, C.C. and the children lived together at a YMCA shelter, but in April 2014 the children were again removed, because defendant was homeless and unemployed.

After the children were removed, defendant missed several appointments with the Division. He was arrested and incarcerated for ten days. In December 2014, the girls were again placed with the paternal relatives. Defendant missed many visits at "Reunity House" and behaved inappropriately at others. In April 2015 defendant was again arrested and incarcerated. Eventually he began supervised visits with the children at the home of his brother and sister-in-law.

Defendant was evaluated by Dr. Peter DeNigris. Dr. DeNigris opined that defendant was "not fit" to parent the children because he was unwilling to acknowledge any responsibility in the issues surrounding his children and unwilling to change in any way. According to Dr. DeNigris, defendant lacked knowledge of child development and was unwilling to learn.

Dr. DeNigris said the girls were in desperate need of permanency, especially Sarah, who had endured the most placement changes. He opined that the paternal caretakers were:

> truly the only consistent caretakers who these children know. They are familiar with their needs and are committed to addressing them on a permanent basis. As such, termination of [defendant's] parental rights will not do more harm than good. The children will not experience severe and enduring harm if ties to their biological father are severed. If they experience any feelings of grief or loss, their reactions could be mitigated by sensitive and nurturing caregivers, such as [the paternal relatives]. Pursuing termination of parental rights will allow these children to remain in an environment that is guided by nurturance, consistency, stability, and appropriate parenting.

Dr. DeNigris said Sarah had a "healthy bond" with the paternal relatives and a healthy bond "is forming" with Suzy.

Defendant's difficulty maintaining employment, homelessness, substance abuse and involvement with the criminal justice system as well as his psychological unfitness all impaired his ability to safely parent his two daughters. The Division offered numerous

4

services to him over an extended period of time, including drug treatment, supervised visits, bus passes, and assistance in locating housing. Defendant participated in some services, but failed to follow-up with substance abuse aftercare, frequently missed visits and did not engage appropriately with his children at supervised visits. Defendant did not testify at the guardianship trial, and at the end of the trial, prior to the judge's decision, he volunteered to surrender his parental rights to his brother and sister-in-law, in part because he had heard that the placement was precarious. The Division did not accept the surrender. See N.J.S.A. 9:3-41; N.J.S.A. 30:4C-23.

In her comprehensive opinion, the trial judge found that the Division had proven all four prongs of the best interests test, N.J.S.A. 30:4C-15.1(a), and that termination of defendant's parental rights was in the children's best interests. The judge found as to prong four, "that the children have developed a strong attachment with their aunt and uncle due to the length of placement, their ages at the time of placement, and the love and consistency they provide to the children." She found, therefore, that the children "will not suffer more harm than good if the rights of [defendant] are terminated."

On this appeal, our review of the trial judge's decision is limited. We defer to her expertise as a Family Part judge, Cesare

v. Cesare, 154 N.J. 394, 412 (1998), and we are bound by her factual findings so long as they are supported by sufficient credible evidence. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). After reviewing the record, we conclude that the trial judge's factual findings are fully supported by the record and, in light of those facts, her legal conclusions are unassailable.

Defendant contends that the trial court erred in its findings on the first three prongs, claiming he only had two drug tests that were positive for cocaine and he completed one drug program. Defendant also asserts that he was unable to create a stable home for his children due to poverty, and not his poor parenting skills. Those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Our concern is that after the guardianship trial, the anticipated adoption of the girls by the paternal relatives did not come to fruition. The girls had to be removed on July 15, 2016, and have been placed in a non-relative resource home where the possibility of adoption exists once again. The judge found that any harm to the children caused by the termination of defendant's parental rights could be mitigated by the paternal relatives, due to their long-standing loving relationship with the

children.  Because of the disruption in that relationship, we are constrained to remand for a further hearing limited to prong four of the best interests test: "Termination of parental rights will not do more harm than good."  N.J.S.A. 30:4C-15.1(a)(4).

Remanded for a further best-interests hearing in light of recent developments.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION